UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,          :

                  Plaintiff,       :

      v.                           :

D-1 MICHAEL ANGELO,                :

D-2 HASSAN KAMAL FAYAD,            :

D-3 MIRNA KAMAL FAYAD              :
a/k/a "MYRNA KAMAL FAYAD"          :

D-4 CORY JUSTIN MANN,              :

D-5 THOMAS REED QUARTZ,            :

and                                :

D-6 ROSINA ANGELO                  :
a/k/a "ROSINA CARUVANA",           :

                  Defendants.      :

Case: 4:22-cr-20188
Judge: Kumar, Shalina D.
MJ: Ivy, Curtis
Filed: 04-06-2022 At 08:53 AM
IN RE: SEALED MATTER (sk)

## INDICTMENT

**THE GRAND JURY CHARGES THAT:**

At times relevant to this Indictment:

## GENERAL ALLEGATIONS

### Introduction

1.    From in and around 2011 through in and around 2022, Defendant MICHAEL ANGELO operated a network of entities providing a multitude of services, including medical, legal, and transportation services, to crash victims. Defendant MICHAEL ANGELO created, and caused to be created, many of the entities within the network and maintained control over many of the entities. Defendant MICHAEL ANGELO designated nominee owners as purported owners and assigned individuals to oversee the day-to-day operation of the entities to disguise his control. Defendant MICHAEL ANGELO, Defendant THOMAS REED QUARTZ, Defendant ROSINA ANGELO a/k/a ROSINA CARUVANA, Defendant HASSAN KAMAL FAYAD, Defendant MIRNA KAMAL FAYAD a/k/a MYRNA KAMAL FAYAD, and Defendant CORY JUSTIN MANN (collectively, "the co-conspirators") operated many of the entities within the network.

2.    Defendant MICHAEL ANGELO and others secured the services of solicitors, to include the services of JOHN ANTHONY CAPELLA (not charged in this indictment), SCOTT JAY JAWETZ (not charged in this indictment), and their entity Blue Horseshoe Consulting, Inc. ("Blue Horseshoe"). JOHN ANTHONY CAPELLA, SCOTT JAY JAWETZ, and

other solicitors obtained UD-10E State of Michigan Traffic Crash Reports ("Crash Reports"), through lawful and unlawful means. Solicitors used the Crash Reports to contact crash victims living in Michigan and offered them medical, legal, and transportation services. Receptive crash victims were directed to specific facilities within the network of entities to maximize fees and insurance proceeds. During the relevant years, the network of entities generated millions of dollars in revenues.

3.      Defendant MICHAEL ANGELO used the network of entities and nominee owners to direct and attribute revenues and expenses to and between entity bank accounts to conceal income earned by him and the co-conspirators from the Internal Revenue Service ("IRS"). Defendant MICHAEL ANGELO also instructed others to direct revenues to specific entities to fraudulently disguise the funds as business expenses. Defendant MICHAEL ANGELO maintained access to bank accounts for entities within the network and used the revenues to pay his own personal expenditures without reporting the funds as income and paying taxes.

4.      While defrauding the IRS, Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and CORY JUSTIN MANN also defrauded third-party finance companies ("factoring companies"). The factoring companies purchased from Defendants MICHAEL ANGELO, HASSAN KAMAL

3

FAYAD, and CORY JUSTIN MANN the rights to payments due for invoices issued to patients and clients who received services from the defendants' entities. From at least in or about 2017 through in or about 2020, these three defendants each independently bundled accounts receivable purportedly owed to entities in the network and sold those bundles, which included accounts receivable they knew had already been paid and settled, to the factoring companies for compensation. The three defendants concealed much of this income from the IRS.

### The Parties and Businesses

5.     Defendant MICHAEL ANGELO was a resident of Springfield, New Jersey, Birmingham, Michigan and Clinton Township, Michigan.

6.     Defendant HASSAN KAMAL FAYAD was a resident of Dearborn, Michigan and Detroit, Michigan.

7.     Defendant MIRNA KAMAL FAYAD was a resident of Dearborn, Michigan and the sister of Defendant HASSAN KAMAL FAYAD.

8.     Defendant CORY JUSTIN MANN was a resident of West Bloomfield, Michigan.

9.     Defendant THOMAS REED QUARTZ was a resident of Detroit, Michigan, Wyandotte, Michigan, Lincoln Park, Michigan, and Grosse Isle, Michigan.

4

10. Defendant ROSINA ANGELO was a resident of Mountainside, New Jersey and the sister of Defendant MICHAEL ANGELO.

11. INDIVIDUAL A, an individual known to the grand jury, operated ENTITY A, a personal injury law firm in Southfield, Michigan, from at least in or about 2011 to 2022.

12. INDIVIDUAL B and INDIVIDUAL C, both individuals known to the grand jury, were chiropractors, who together owned and operated several businesses, including medical billing companies and magnetic resonance imaging ("MRI") facilities with Defendant CORY JUSTIN MANN from in or about 2009 through at least 2015.

13. INDIVIDUAL D, an individual known to the grand jury, was a chiropractor, who operated ENTITY B, a physical therapy clinic operating in Flint, Michigan.

14. INDIVIDUAL F, an individual known to the grand jury, was a chiropractor, who operated ENTITY C, a business providing MRI services to patients in Dearborn, Michigan.

15. INDIVIDUAL G, an individual known to the grand jury, was a physician, who operated ENTITY D, a business providing ambulatory surgical services to patients in Clinton Township, Michigan.

16. JOHN ANTHONY CAPELLA (not charged in this indictment) and SCOTT JAY JAWETZ (not charged in this indictment) were Florida residents who, from at least in or about 2011 to in or about 2018, worked as phone solicitors for several businesses telephoning crash victims living in Michigan within a few days of the date of their accident to solicit them for services offered by specific personal injury lawyers, chiropractors, and MRI facilities and directing receptive automobile crash victims to specific facilities. CAPELLA and JAWETZ typically directed clients in Michigan to send payment for their services in cash via a commercial courier service to Blue Horseshoe Consulting, Inc. ("Blue Horseshoe") at a private mailbox in Boca Raton, Florida.

17. Greater Lakes Ambulatory Surgical Center, L.L.C. ("Greater Lakes") was a limited liability company operating in Clinton Township, Michigan. Greater Lakes provided ambulatory surgical services to patients. Defendant MICHAEL ANGELO and INDIVIDUAL H, an individual known to the grand jury, held ownership interests in Greater Lakes and controlled Greater Lakes bank accounts.

18. U.S. Health Pharmaceuticals, L.L.C., dba Meds Direct ("Meds Direct"), was a limited liability company operating in Clinton Township,

Michigan. Defendant MICHAEL ANGELO maintained operational and financial control of Meds Direct.

19.     Spine and Health, P.L.L.C. ("Spine and Health") was a professional limited liability company operating in Southfield, Michigan. Defendants HASSAN KAMAL FAYAD, MIRNA KAMAL FAYAD and INDIVIDUAL L, an individual known to the grand jury, controlled Spine and Health bank accounts. Defendant HASSAN KAMAL FAYAD maintained operational control of Spine and Health.

20.     Gravity Imaging, L.L.C. ("Gravity Imaging") was a limited liability company operating in Berkley, Michigan. Gravity Imaging provided MRI services to patients. Defendants HASSAN KAMAL FAYAD, MIRNA KAMAL FAYAD, and CORY JUSTIN MANN and others held ownership interests in Gravity Imaging and controlled Gravity Imaging bank accounts at various times.

21.     4 Transport, Inc. ("4 Transport") was a corporation operating in Dearborn, Michigan. 4 Transport provided transportation services. Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD maintained operational and financial control of 4 Transport.

22.     411 Help, L.L.C., dba 411 Therapy, L.L.C. ("411 Help"), was a limited liability company operating in Southfield, Michigan. 411 Help

provided physical therapy and rehabilitation services to patients. Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and MIRNA KAMAL FAYAD maintained operational and financial control of 411 Help at various times.

23.    Total Toxicology Labs, L.L.C. ("Total Toxicology") was a limited liability company operating in Southfield, Michigan. Total Toxicology provided clinical laboratory services testing fluid samples provided by patients. Defendant CORY JUSTIN MANN and HASSAN KAMAL FAYAD and INDIVIDUAL C maintained financial control of Total Toxicology.

### The Internal Revenue Service (IRS) and IRS Forms

24.    The IRS was an agency of the United States Department of the Treasury responsible for enforcing and administering the tax laws of the United States and collecting taxes owed to the United States.

25.    A Form 1040, U.S. Individual Income Tax Return ("Form 1040") was a tax return filed with the IRS in the name of a taxpayer that reported, among other things, the taxpayer's income, deductions and credits, and the amount of tax owed or tax refund claimed.

26.    A Schedule C, Profit or Loss From Business ("Schedule C"), was an IRS from that taxpayers attached to Forms 1040, when applicable,

to report, among other things, income and expenses from business entities treated as sole proprietorships pursuant to federal internal revenue laws.

27.    A Form 1065, U.S. Return of Partnership Income ("Form 1065"), was a tax return filed with the IRS in the name of a partnership entity that reported, among other things, the partnership's gross income and the deductions and credits allowed by law. Income of a partnership, reported on the Form 1065, flows through and should be reported on the Form 1040 of the partners.

28.    A limited liability company (L.L.C.) was a business entity organized in the United States under state law. Depending on elections made on behalf of the L.L.C., the IRS will treat an L.L.C. as either a corporation, partnership, or as part of the L.L.C.'s owner's tax return (a "disregarded entity"). An L.L.C. with only one member is treated as an entity disregarded as separate from its owner unless it files Form 8832 and elects to be treated as a corporation. If an L.L.C. has only one member and is classified as an entity disregarded as separate from its owner, its income, deductions, gains, losses, and credits are reported on a Schedule C filed with the owner's Form 1040.

29.    A Form 1120S, U.S. Income Tax Return for an S Corporation ("Form 1120S"), was a tax return filed with the IRS in the name of an S-

Corporation entity that reported, among other things, the entity's gross income and the deductions and credits allowed by law.

### The Fraudulent Sale of Accounts Receivable and Concealment of Resulting Taxable Income

30.    From in or about 2017 through at least 2022, Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and CORY JUSTIN MANN each bundled accounts receivable owed to entities they controlled and sold those bundles to BUYER A, BUYER B, and other entities for compensation. Unbeknownst to BUYER A, BUYER B, and other entities, Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and CORY JUSTIN MANN included in those bundles invoices that had been previously settled and otherwise rendered uncollectable. Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and CORY JUSTIN MANN directed BUYER A, BUYER B, and other entities to make compensation payments due under each Lien and Receivables Portfolio Purchase and Assignment Agreement ("Purchase Agreement") to designated bank accounts controlled by these defendants. Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and CORY JUSTIN MANN then attempted to conceal the taxable income by providing fraudulent financial records to their respective return preparers that omitted taxable income and included fraudulent business expenses charged by entities under their control.

## COUNTS ONE THROUGH TWENTY-ONE

18 U.S.C. § 1343
Wire Fraud
(Michael Angelo, Hassan Kamal Fayad, Cory Justin Mann)

D-1 MICHAEL ANGELO
D-2 HASSAN KAMAL FAYAD
D-4 CORY JUSTIN MANN

31.     The factual allegations contained in Paragraphs 1 through 30 of this Indictment are re-alleged and incorporated herein as if copied verbatim.

32.     From in or about 2017 through at least 2020, Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and CORY JUSTIN MANN each individually entered into a Purchase Agreement or an amendment to a Purchase Agreement with BUYER A and BUYER B, wherein, among other things, defendants agreed to direct entities under their control to do the following:

a.     Gather unpaid and collectable invoices ("receivables") generated by each entity identified below for medical services provided by the entity identified below to specific identified patients on specific identified dates into bundles of receivables labelled as specific numbered portfolio purchase orders ("portfolios"). Each portfolio had a face value comprised of the total of the values of receivables contained in the portfolio; and

11

b.      Assign to BUYER A and BUYER B the future right, title, and interest to receive the funds owed by third parties in return for BUYER A's and BUYER B's agreement to pay to the entity identified below an agreed percentage of the face value of each portfolio.

33.    Within each Purchase Agreement or amendment to a Purchase Agreement executed by Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and CORY JUSTIN MANN each defendant represented, among other things, in Paragraph 7 of the Purchase Agreement or amendment to a Purchase Agreement, that, among other things:

a.      The entity "… has not received payment from [p]atient or any third party for any portion of the [r]eceivables…" and "…each [r]eceivable arises out of health care services provided to [p]atients with personal injury claims that, as of the date the corresponding [r]eceivable is transferred to [BUYER A], are held by the corresponding [p]atient and have not been resolved through settlement, mediation, litigation, arbitration, verdict, judgment, order, or otherwise;"

b.      The entity "… has made no statement or representation to [BUYER A] prior to the execution and delivery of the Agreement which was…" "….misleading or untrue as to any material fact, omitted or failed to disclose any material fact related to this agreement;"

c.      The entity "... is not bound by any existing agreements, arrangements, options, laws, or regulations restricting in any manner the transfer of any rights or interests in the [r]eceivables..." or the power of each entity to enter into the Purchase Agreement;

d.      That "[e]ach [r]eceivable has been originated, maintained, and serviced by...[Medical Provider] ...in compliance with applicable local, state, and federal laws;" and

e.      That "[t]here is no Payment Program survey, review or investigation in progress with respect to Medical Provider, a review or investigation by any state or federal office of inspector general or any private payor's special investigative unit."

34.     Within each portfolio executed by Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and CORY JUSTIN MANN each defendant agreed the individual portfolio was generated in accordance with the terms of a Purchase Agreement and was signed under penalty of perjury to be true and accurate.

35.     On or about August 15, 2017, Defendant MICHAEL ANGELO, directed the execution of the Purchase Agreement between Greater Lakes and BUYER A.

36.     On or about August 29, 2017, Defendant MICHAEL ANGELO directed the execution of the Purchase Agreement between Meds Direct and BUYER A.

37.     On or about November 7, 2017, Defendant MICHAEL ANGELO executed the Purchase Agreement between Meds Direct and BUYER A.

38.     On or about December 18, 2017, Defendant CORY JUSTIN MANN executed the Purchase Agreement between Gravity Imaging and BUYER A.

39.     On or about January 22, 2018, Defendant HASSAN KAMAL FAYAD, in his capacity as Chief Executive Officer ("CEO") of 411 Help, executed the Purchase Agreement between 411 Help and BUYER A.

40.     On or about January 24, 2018, Defendant MICHAEL ANGELO executed an amendment to the Purchase Agreement between Greater Lakes and BUYER A.

41.     On or about February 23, 2018, Defendant HASSAN KAMAL FAYD, in his capacity as CEO of Spine and Health, executed the Purchase Agreement between Spine and Health and BUYER A.

42.     On or about February 26, 2018, Defendant CORY JUSTIN MANN, executed the Purchase Agreement between Total Toxicology and BUYER A.

14

43.     From in or about 2017 though at least 2020, Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and CORY JUSTIN MANN delivered or caused to be delivered portfolios to BUYER A and BUYER B containing receivables when each defendant knew that contrary to language in Paragraph 7 of each relevant Purchase Agreement or amendment to a Purchase Agreement:

a.     Payment was received for some or all of the amount of the receivable;

b.     The defendant identified in the chart in Paragraph 44 below and the relevant entity identified in the chart in Paragraph 44 below entered an agreement to release or settle the receivable and therefore the relevant entity no longer had the right to collect payment for the identified receivable and keep the collected funds;

c.     The defendant identified in the chart in Paragraph 44 below and the relevant entity received notice that payment was denied for the identified receivable; or

d.     The defendant identified in the chart in Paragraph 44 below and the relevant entity had previously sold to an entity other than BUYER A and BUYER B the right to collect payment for the receivable or assigned the future right, title, and interest to receive the funds owed by

third parties to satisfy the relevant receivables and thus no longer had any collection rights to sell or assign.

44. On or about the dates identified in the charts below, within the Eastern District of Michigan and elsewhere, the defendants identified in the chart below, together with others, did knowingly and intentionally devise a scheme and artifice to defraud BUYER A and BUYER B, and to obtain money and property from BUYER A and BUYER B by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, transmit and cause to be transmitted writings, signs, signals and sounds by means of wire communication in interstate commerce sent to BUYER A and BUYER B, as set forth in the chart below:

| COUNT | DEFENDANT | APPROX. DATE | DESCRIPTION OF WIRE TRANSMISSION | RELEVANT PORTFOLIO / ENTITY |
|---|---|---|---|---|
| ONE | D-1 MICHAEL ANGELO | 9/13/17 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $727,246.96 | 2017-2426-6 / Greater Lakes |
| TWO | D-1 MICHAEL ANGELO | 9/27/17 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $636,375.69 | 2017-2429-4 / Meds Direct |
| THREE | D-1 MICHAEL ANGELO | 11/8/17 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $1,502,946.97 | 2017-2436-1 / Tox Testing |

| COUNT | DEFENDANT | APPROX. DATE | DESCRIPTION OF WIRE TRANSMISSION | RELEVANT PORTFOLIO / ENTITY |
|---|---|---|---|---|
| FOUR | D-1 MICHAEL ANGELO | 11/22/17 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $86,363.51 | 2017-2429-7 / Meds Direct |
| FIVE | D-1 MICHAEL ANGELO | 2/28/18 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $284,700 | 2017-2436-2 / Tox Testing |
| SIX | D-2 HASSAN KAMAL FAYAD | 8/16/17 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $58,718.88 | 2017-2428-1 / 4 Transport |
| SEVEN | D-2 HASSAN KAMAL FAYAD | 10/4/17 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $57,614.60 | 2017-2428-8 / 4 Transport |
| EIGHT | D-2 HASSAN KAMAL FAYAD | 9/6/17 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $142,730.31 | 2017-2428-4 / 4 Transport |
| NINE | D-2 HASSAN KAMAL FAYAD | 9/13/17 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $86,477.58 | 2017-2428-5 / 4 Transport |
| TEN | D-2 HASSAN KAMAL FAYAD | 9/20/17 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $138,783.54 | 2017-2428-6 / 4 Transport |
| ELEVEN | D-2 HASSAN KAMAL FAYAD | 2/1/18 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $75,464,15 | 2018-2451-1 / 411 Help |
| TWELVE | D-2 HASSAN KAMAL FAYAD | 9/27/18 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $29,947.84 | 2018-2458-1 / Spine and Health |
| THIRTEEN | D-2 HASSAN KAMAL FAYAD | 3/14/18 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $13,574.60 | 2018-2451-6 / 411 Help |

| COUNT | DEFENDANT | APPROX. DATE | DESCRIPTION OF WIRE TRANSMISSION | RELEVANT PORTFOLIO / ENTITY |
|---|---|---|---|---|
| FOURTEEN | D-2 HASSAN KAMAL FAYAD | 8/22/18 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $52,173 | 2017-2448-21 / Gravity Imaging |
| FIFTEEN | D-2 HASSAN KAMAL FAYAD | 10/4/18 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $94,248 | 2017-2448-27 / Gravity Imaging |
| SIXTEEN | D-2 HASSAN KAMAL FAYAD | 1/4/19 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $57,222 | 2017-2448-39 / Gravity Imaging |
| SEVENTEEN | D-2 HASSAN KAMAL FAYAD | 1/23/19 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $22,882.70 | Portfolio 2018-2451-100 / 411 Help |
| EIGHTEEN | D-2 HASSAN KAMAL FAYAD | 1/30/18 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $23,352.90 | 2018-2451-101 / 411 Help |
| NINETEEN | D-4 CORY JUSTIN MANN | 12/22/17 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $683,298 | 2017-2448-1 / Gravity Imaging |
| TWENTY | D-4 CORY JUSTIN MANN | 12/27/17 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $277,101 | 2017-2448-2 / Gravity Imaging |
| TWENTY-ONE | D-4 CORY JUSTIN MANN | 1/10/18 | Electronic transmission of medical billing and assignment documents from Michigan to BUYER A and BUYER B in Virginia and Texas resulting in the disbursement of $238,986 | 2017-2448-3 / Gravity Imaging |

**All in violation of Title 18, United States Code, Sections 1343 and 3551 et seq.**

## **COUNT TWENTY-TWO**

18 U.S.C. § 1028A
Aggravated Identity Theft
(Hassan Kamal Fayad)

D-2 HASSAN KAMAL FAYAD

45.     The factual allegations contained in Paragraphs 1 through 30

and 32 through 43 of this Indictment are re-alleged and incorporated herein

as if copied verbatim.

46.     On or about December 30, 2019, BUYER B filed a civil claim

against Defendants HASSAN KAMAL FAYAD and CORY JUSTIN MANN,

and Gravity Imaging in the 53rd Judicial District Court of Travis County,

Texas for damages alleging claims for, among other things, fraud, fraud by

nondisclosure, and conversion arising out of relevant Gravity Imaging

Purchase Agreements.

47.     On or about February 10, 2020, Defendant HASSAN KAMAL

FAYAD caused a responsive pleading to be filed in the 53rd Judicial District

Court of Travis County, Texas in response to BUYER B's civil claim. The

pleading Defendant HASSAN KAMAL FAYAD caused to be filed included a

document entitled "Declaration of Hassan Fayad" stating, under penalty of

perjury, that Defendant HASSAN KAMAL FAYAD resided at a false home

address in Dearborn, Michigan, a home address where INDIVIDUAL I, an

individual known to the grand jury, who shares the first and last name of Defendant HASSAN KAMAL FAYAD, in fact resided.

48. On or about April 27, 2020, Defendant HASSAN KAMAL FAYAD and BUYER B executed a Settlement Agreement with BUYER B regarding ongoing civil claims filed by BUYER B against Defendant HASSAN KAMAL FAYAD, 411 Help, 4 Transport, Gravity Imaging, and Spine and Health in the 53rd Judicial District Court of Travis County, Texas "Settlement Agreement"). The Settlement Agreement executed by Defendant HASSAN KAMAL FAYAD and BUYER B provided, among other things, that Defendant HASSAN KAMAL FAYAD, 411 Help, 4 Transport, Gravity Imaging, and Spine and Health agreed pay BUYER B approximately $7,137,275 obtained from future accounts receivable.

49. On or about May 10, 2021, Defendant HASSAN KAMAL FAYAD executed a Forbearance Agreement related to approximately $6,373,862 still owed by Defendant HASSAN KAMAL FAYAD, 411 Help, 4 Transport, Gravity Imaging, and Spine and Health to BUYER B pursuant to the relevant Settlement Agreement, using the name "Hassan Fayad" and stating, under penalty of perjury, that Defendant HASSAN KAMAL FAYAD resided at a false home address in Dearborn, Michigan, a home address

where INDIVIDUAL I, who shares the first and last name of Defendant HASSAN KAMAL FAYAD, in fact resided.

50.    On or about May 10, 2021, within the Eastern District of Michigan and elsewhere, Defendant HASSAN KAMAL FAYAD, together with others, during and in relation to a felony violation enumerated in 18 U.S.C. §1028A(c), to wit: wire fraud, in violation of 18 U.S.C. §1343, not charged in this Indictment, did knowingly and intentionally transfer, possess, and use without lawful authority through the use of an interstate wire communication sent from Michigan to Texas, one or more means of identification of another person, to wit: the name and home address of INDIVIDUAL I, who shares the first and last name of Defendant HASSAN KAMAL FAYAD.

**All in violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(5), 2 and 3551 et seq.**

## COUNT TWENTY-THREE

18 U.S.C. § 371
Conspiracy to Defraud the United States
(Michael Angelo, Thomas Reed Quartz, Rosina Angelo)

D-1 MICHAEL ANGELO
D-5 THOMAS REED QUARTZ
D-6 ROSINA ANGELO

51.    The factual allegations contained in Paragraphs 1 through 30, 32 through 43, and 46 through 49 of this Indictment are re-alleged and incorporated herein as if copied verbatim.

### *Relevant Businesses*

52.    Alleycat Holdings, L.L.C. ("Alleycat") was a limited liability company and an entity controlled by Defendant MICHAEL ANGELO. Defendant MICHAEL ANGELO caused Alleycat to be registered to do business in Michigan. Defendant MICHAEL ANGELO held an ownership interest in Alleycat, controlled Alleycat bank accounts, and earned taxable income through Alleycat.

53.    Comprehensive Billing Solutions, L.L.C. ("Comprehensive Billing") was a limited liability company and an entity controlled by Defendant MICHAEL ANGELO. Defendant MICHAEL ANGELO held an ownership interest in Comprehensive Billing, controlled Comprehensive

22

Billing bank accounts, and earned taxable income through Comprehensive Billing.

54.     Virgilio Leasing, L.L.C. ("Virgilio Leasing") was a limited liability company and an entity controlled by Defendant MICHAEL ANGELO. Defendant MICHAEL ANGELO held an ownership interest in Virgilio Leasing, controlled Virgilio Leasing bank accounts, and earned taxable income through Virgilio Leasing. Defendant MICHAEL ANGELO used the name of a third party in the entity name of the Virgilio Leasing to disguise his own ownership.

55.     James Virgilio Holdings, L.L.C. ("JV Holdings") was a limited liability company and an entity controlled by Defendant MICHAEL ANGELO. Defendant MICHAEL ANGELO held an ownership interest in JV Holdings, controlled JV Holdings bank accounts, and earned taxable income through JV Holdings. Defendant MICHAEL ANGELO used the name of a third party in the entity name of the JV Holdings to disguise his ownership.

56.     Pacific Marketing and Advertising, L.L.C. ("Pacific Marketing"), was a limited liability company and an entity controlled by Defendants MICHAEL ANGELO and ROSINA ANGELO. Defendant MICHAEL ANGELO held an ownership interest in Pacific Marketing and earned

taxable income through Pacific Marketing. Defendants MICHAEL ANGELO and ROSINA ANGELO both had control over Pacific Marketing bank accounts.

57.     Michigan Accident Associates, P.L.L.C. ("Michigan Accident Associates") was a professional limited liability company operating as a law firm in Southfield, Michigan. Defendants MICHAEL ANGELO and THOMAS REED QUARTZ maintained operational and financial control of Michigan Accident Associates. Defendant THOMAS REED QUARTZ was an attorney licensed in the State of Michigan.

### The Conspiracy to Defraud the IRS Through the Use of Nominee Owners and Entities Controlled by Michael Angelo

58.     From in or about January 2012 and continuing to in or about January 2022, in the Eastern District of Michigan and elsewhere, Defendants MICHAEL ANGELO, THOMAS REED QUARTZ, and ROSINA ANGELO, along with INDIVIDUAL D, INDIVIDUAL F, and INDIVIDUAL G, and others, both known and unknown to the grand jury, intentionally, unlawfully, and knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment, and

collection of revenue: to wit, individual income taxes, in violation of Title 18, United States Code, Section 371.

## Object of the Conspiracy

59.    It was the object of this conspiracy for Defendants MICHAEL ANGELO, THOMAS REED QUARTZ, and ROSINA ANGELO, along with others, both known and unknown to the grand jury, to impede and impair the ascertainment, collection, and assessment of the income taxes due and owing for Defendants MICHAEL ANGELO, THOMAS REED QUARTZ, and ROSINA ANGELO for calendar years 2012 through 2021.

## Manner and Means of the Conspiracy

60.    To accomplish the object of this conspiracy, Defendants MICHAEL ANGELO, THOMAS REED QUARTZ, and ROSINA ANGELO along with INDIVIDUAL D, INDIVIDUAL F, and INDIVIDUAL G and other persons known and unknown to the grand jury agreed to:

a.    Operate entities at the direction, and for the financial benefit of Defendant MICHAEL ANGELO;

b.    Accept funds from Defendant MICHAEL ANGELO in exchange for an agreement to disburse funds from entity bank accounts at the direction of Defendant MICHAEL ANGELO. Such disbursements included;

> i. Disbursement of funds to bank accounts designated by Defendant MICHAEL ANGELO;

> ii. Disbursement of funds to pay Defendant MICHAEL ANGELO's personal expenses;

> iii. Disbursement of funds to pay wages and expenses for other entities controlled by Defendant MICHAEL ANGELO; and

> iv. Disbursement and hand-delivering of funds at the direction of Defendant MICHAEL ANGELO to pay patients to obtain services from businesses designated by Defendant MICHAEL ANGELO and steer such patients away from competitors.

> c. Provide fraudulent and incomplete information to tax return preparers.

## Overt Acts

61. In furtherance of the conspiracy, and to achieve the unlawful objects thereof, Defendants MICHAEL ANGELO, THOMAS REED QUARTZ, and ROSINA ANGELO along with INDIVIDUAL D, INDIVIDUAL F, INDIVIDUAL G, and INDIVIDUAL J, an individual known to the grand jury, and other persons known and unknown to the grand jury, committed the following overt acts in the Eastern District of Michigan and elsewhere:

a.      On or about October 24, 2012, Defendants MICHAEL ANGELO and ROSINA ANGELO opened Bank of America bank accounts ending in 1006 and 6214 in the name of Pacific Marketing ("Pacific Marketing accounts");

b.      From June 2013 to in or about March 2015, Defendant MICHAEL ANGELO, INDIVIDUAL F and others caused at least $17,000 to be disbursed from ENTITY C's bank accounts to pay fees earned by Defendant MICHAEL ANGELO with checks payable to Pacific Marketing;

c.      From August 2013 to in or about October 2015, INDIVIDUAL F permitted Defendant MICHAEL ANGELO to use a bank debit card drawing on an ENTITY C bank account to pay at least $38,000 in personal expenses on behalf of Defendant MICHAEL ANGELO;

d.      In 2014, Defendants MICHAEL ANGELO and ROSINA ANGELO and INDIVIDUAL J deposited, and caused to be deposited, more than $822,000 in funds to Pacific Marketing accounts;

e.      In 2014, Defendant ROSINA ANGELO executed bank withdrawals causing over $100,000 to be removed from Bank of America Pacific Marketing accounts;

f.      From February 2014 to at least in or about 2015, Defendant MICHAEL ANGELO, INDIVIDUAL A, and others caused at least

27

$11,500 to be disbursed from ENTITY A's bank accounts to pay fees earned by Defendant MICHAEL ANGELO with checks payable Pacific Marketing;

g.     From May 2015 to at least in or about April 2016, Defendant MICHAEL ANGELO, INDIVIDUAL G, and others caused at least $170,000 to be disbursed from ENTITY D's bank accounts to pay fees earned by Defendant MICHAEL ANGELO with checks payable to Pacific Marketing;

h.     On or about January 20, 2015, Defendant MICHAEL ANGELO opened a PNC Financial Services Group, Inc. ("PNC Bank") account ending in 7774 in the name of Pacific Marketing ("PNC Bank Pacific Marketing account");

i.     In 2015, Defendants MICHAEL ANGELO and ROSINA ANGELO and INDIVIDUAL J deposited, and caused to be deposited, over approximately $1,000,000 in funds to the PNC Bank Pacific Marketing account;

j.     In 2014 and 2015, Defendants MICHAEL ANGELO and ROSINA ANGELO caused INDIVIDUAL K, an individual known to the grand jury, to pay purported advertising fees owed to Defendant MICHAEL ANGELO with checks payable to Pacific Marketing. In 2015, Defendants

MICHAEL ANGELO and ROSINA ANGELO and others then caused the checks to be deposited to the PNC Bank Pacific Marketing account;

k.      In 2016, Defendants MICHAEL ANGELO and ROSINA ANGELO and INDIVIDUAL J deposited, and caused to be deposited, approximately $2,000,000 in funds to the PNC Bank Pacific Marketing account;

l.      From May 2016 to at least in or about December 2016, Defendants MICHAEL ANGELO, THOMAS REED QUARTZ, and others caused at least $24,000 to be disbursed from Michigan Accident Associates' bank accounts to pay fees earned by Defendant MICHAEL ANGELO with checks payable to Pacific Marketing;

m.      From May 2016 to at least in or about December 2016, Defendants MICHAEL ANGELO, THOMAS REED QUARTZ and others caused at least $16,000 to be disbursed from Michigan Accident Associates' bank accounts to pay purported rental payments with checks payable to Alleycat, an entity controlled by Defendant MICHAEL ANGELO;

n.      From in or about April 2016 through in or about 2017, Defendants MICHAEL ANGELO, THOMAS QUARTZ and others directed cash withdrawals from a Michigan Accident Associates' bank account and

then caused the cash to be disbursed as incentives to patients to patronize

entities owned by Defendant MICHAEL ANGELO;

      o.     On or about January 27, 2016, Defendant ROSINA

ANGELO and others prepared and filed with the IRS a false and fraudulent

2014 Form 1040 for Defendant ROSINA ANGELO;

      p.     From in or about May 2016 through at least in or about

June 2020, Defendant MICHAEL ANGELO and INDIVIDUAL J directed

multiple disbursements of at least $2,000 from bank accounts controlled by

HASSAN KAMAL FAYAD to pay purported rental payments with checks

payable to Virgilio Leasing, an entity controlled by Defendant MICHAEL

ANGELO;

      q.     On or about June 23, 2016, Defendant ROSINA ANGELO

and others provided, and caused to be provided, fraudulent financial

records to INDIVIDUAL E and caused INDIVIDUAL E to prepare a false

and fraudulent 2015 Form 1040 for Defendant ROSINA ANGELO, which

Defendant ROSINA ANGELO then filed with the IRS;

      r.     On or about October 14, 2016, Defendant MICHAEL

ANGELO and others directed at least $500,000 from the PNC Bank Pacific

Marketing account to a Black River Wealth Management LTD account held

in the name of JV Holdings and controlled by Defendant MICHAEL
ANGELO;

      s.      On or about May 10, 2017, Defendants MICHAEL
ANGELO and ROSINA ANGELO along with INDIVIDUAL J provided, and
caused to be provided, fraudulent financial records to INDIVIDUAL E and
caused INDIVIDUAL E to prepare a false and fraudulent 2014 Form 1040
for Defendant MICHAEL ANGELO to file with the IRS, which Defendant
MICHAEL ANGELO then filed with the IRS;

      t.      In or about December 2017, Defendant THOMAS REED
QUARTZ provided fraudulent and incomplete financial records to his return
preparer to prevent any Form 1099 or Form W-2 from being filed with the
IRS reporting taxable income earned by Defendant MICHAEL ANGELO for
calendar year 2016;

      u.      On or about June 12, 2019, Defendants HASSAN KAMAL
FAYAD and MIRNA KAMAL FAYAD executed a signature card for New
Horizon Fifth Third Bank account ending in 4851; and

      v.      From at least 2020 through 2021, Defendants MICHAEL
ANGELO and INDIVIDUAL J directed Defendants HASSAN KAMAL
FAYAD and MIRNA KAMAL FAYAD to disburse, and caused to be
disbursed, at least approximately $27,000 from New Horizon's bank

accounts made payable to Virgilio Leasing, an entity controlled by

Defendant MICHAEL ANGELO.

**All in violation of Title 18, United States Code, Section 371.**

## COUNT TWENTY-FOUR

18 U.S.C. § 371
Conspiracy to Defraud the United States
(Michael Angelo, Hassan Kamal Fayad, Mirna Kamal Fayad)

D-1 MICHAEL ANGELO
D-2 HASSAN KAMAL FAYAD
D-3 MIRNA KAMAL FAYAD

62.    The factual allegations contained in Paragraphs 1 through 30,

32 through 43, 46 through 49, 52 through 57, and 59 through 61 of this

Indictment are re-alleged and incorporated herein as if copied verbatim.

### *Relevant Businesses*

63.    New Horizon Chiropractic, P.L.L.C. ("New Horizon") was a

professional limited liability company operating in Dearborn and Southfield,

Michigan. Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL

FAYAD controlled New Horizon bank accounts. Defendants HASSAN

KAMAL FAYAD MIRNA KAMAL FAYAD, and INDIVIDUAL F used New

Horizon to conceal their taxable income.

64.    4 Health Management, L.L.C. ("4 Health") was a limited liability

company operating in Dearborn, Michigan. Defendants HASSAN KAMAL

32

FAYAD and MIRNA KAMAL FAYAD maintained operational and financial control of 4 Health.

### The Conspiracy to Defraud the IRS Through the Use of 411 Help, 4 Transport and Other Entities

65.     From in or about June 2017 and continuing to at least 2021, in the Eastern District of Michigan and elsewhere, Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and MIRNA KAMAL FAYAD along with INDIVIDUAL E, INDIVIDUAL J, and other persons known and unknown to the grand jury intentionally, unlawfully, and knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of revenue: to wit, income taxes, in violation of Title 18, United States Code, Section 371.

### Object of the Conspiracy

66.     It was the object of this conspiracy for Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and MIRNA KAMAL FAYAD, along with others, known and unknown to the grand jury, to impede and impair the ascertainment, collection, and assessment of the individual income taxes due and owing for Defendants MICHAEL ANGELO, HASSAN

KAMAL FAYAD, and MIRNA KAMAL FAYAD for the calendar years 2017 through at least January 2022.

## Manner and Means of the Conspiracy

67. To accomplish the object of this conspiracy, Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD and other persons known and unknown to the grand jury agreed to:

a. Transfer ownership of entities without documenting sale prices paid to conceal the gain, loss, and tax effect of the transaction;

b. Disburse funds from and to entities designated by Defendant MICHAEL ANGELO;

c. Provide fraudulent and incomplete financial records to their respective personal tax return preparers; and

d. File and cause to be filed individual and business income tax returns with the IRS that misstated entity ownership interests, designated taxable income or losses to the wrong businesses, and underreported taxable income.

## Overt Acts

68. In furtherance of the conspiracy, and to achieve the unlawful objects thereof, Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and MIRNA KAMAL FAYAD, along with INDIVIDUAL J, and other

persons known and unknown to the grand jury, committed the following overt acts in the Eastern District of Michigan and elsewhere:

a.     In June 2017, Defendant MICHAEL ANGELO along with INDIVIDUAL J, obtained, and caused to be obtained, from the IRS an Employer Identification Number ("EIN") for 411 Help designating Defendant MICHAEL ANGELO as the sole owner of the entity;

b.     On or about July 13, 2017, Defendants MICHAEL ANGELO and HASSAN KAMAL FAYAD opened Bank of America bank account ending in 5177 in the name of 411 Help;

c.     From 2017 to at least 2020, Defendants MICHAEL ANGELO and HASSAN KAMAL FAYAD used nominee owners and provided fraudulent financial records to their return preparers to impair and impede the ability of the IRS to determine their individual taxes due and owing;

d.     On or about July 31, 2017, Defendants MICHAEL ANGELO and HASSAN KAMAL FAYAD together met with Defendant HASSAN KAMAL FAYAD's return preparer and executed and provided a notarized document to the return preparer stating Defendant MICHAEL ANGELO sold his ownership interest in 411 Help to Defendant HASSAN KAMAL FAYAD "as of July 31, 2017";

e.      On or about February 9, 2018, Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, MIRNA KAMAL FAYAD and others, known and unknown to the grand jury, caused the preparation and filing of a false and fraudulent 411 Help 2017 Form 1120S with the IRS that:

i.      Falsely provided, among other things, that Defendant HASSAN KAMAL FAYAD was the sole owner 411 Help from the date of its incorporation to at least December 31, 2017; and

ii.      Omitted the amount of taxable income Defendant MICHAEL ANGELO earned from the sale of his ownership interest in 411 Help to Defendant HASSAN KAMAL FAYAD;

f.      On or about February 11, 2018, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD, together with others, prepared, and caused to be prepared, and filed, and caused to be filed, with the IRS a false and fraudulent 2017 Form 1040 for Defendant HASSAN KAMAL FAYAD, that, among other things, failed to report $50,000 in taxable income disbursed to Defendant HASSAN KAMAL FAYAD on October 19, 2017;

g.      On or about April 9, 2018, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD prepared, and caused to be prepared, and filed, and caused to be filed, with the IRS a false and fraudulent 2017

Form 1120S for 4 Transport, that, among other things, failed to accurately report $50,000 of 4 Transport funds disbursed to Defendant HASSAN KAMAL FAYAD on October 19, 2017;

      h.    On or about May 19, 2020, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD prepared, and caused to be prepared, and filed, and caused to be filed, with the IRS a false and fraudulent 2019 Form 1120S for 4 Transport, that, among other things, failed to accurately report approximately $229,600 of distributions to Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD; and

      i.    On or about May 29, 2020, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD, prepared and caused to be prepared, and filed, and caused to be filed, with IRS a false and fraudulent 2019 Form 1120S for 411 Help, that, among other things, failed to accurately report approximately $259,900 of distributions to Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD.

**All in violation of Title 18, United States Code, Section 371.**

## COUNT TWENTY-FIVE

18 U.S.C. § 371
Conspiracy to Defraud the United States
(Michael Angelo, Hassan Kamal Fayad, Mirna Kamal Fayad,
Cory Justin Mann)

D-1 MICHAEL ANGELO
D-2 HASSAN KAMAL FAYAD
D-3 MIRNA KAMAL FAYAD
D-4 CORY JUSTIN MANN

69.    The factual allegations contained in Paragraphs 1 through 30,

32 through 43, 46 through 49, 52 through 57, 59 through 61, 63 through 64,

and 66 through 68 of this Indictment are re-alleged and incorporated herein

as if copied verbatim.

### Relevant Business

70.    4 UR Recovery Therapy, L.LC. ("4 UR Recovery") was a limited

liability company operating in Southfield, Michigan. Defendants HASSAN

KAMAL FAYAD and MIRNA KAMAL FAYAD maintained operational and

financial control of 4 Health.

### *The Conspiracy to Defraud the IRS Through the Use of Gravity Imaging and Other Entities*

71.    From at least 2016 and continuing to at least 2022, in the

Eastern District of Michigan and elsewhere, Defendants MICHAEL

ANGELO, HASSAN KAMAL FAYAD, MIRNA KAMAL FAYAD, and CORY

JUSTIN MANN, along with others, known and unknown to the grand jury,

intentionally, unlawfully, and knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of revenue: to wit, individual income taxes, in violation of Title 18, United States Code, Section 371.

## Object of the Conspiracy

72.    It was the object of this conspiracy for Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, MIRNA KAMAL FAYAD, and CORY JUSTIN MANN, along with others, known and unknown to the grand jury, to impede and impair the ascertainment, collection, and assessment of the income taxes due and owing for Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, MIRNA KAMAL FAYAD, and CORY JUSTIN MANN for calendar years 2017 through at least 2022.

## Manner and Means of the Conspiracy

73.    To accomplish the object of this conspiracy, Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, MIRNA KAMAL FAYAD, and CORY JUSTIN MANN along with INDIVIDUAL F, INDIVIDUAL J, and other persons known and unknown to the grand jury agreed to:

a.     Transfer ownership of entities without documenting sale prices paid in order to conceal the gain, loss, and tax effect of the transaction;

b.     Disburse funds from and to entities designated by Defendant MICHAEL ANGELO;

c.     Provide fraudulent and incomplete financial records to their respective tax return preparers; and

d.     File, and cause to be filed, individual and business income tax returns to the IRS that misstated entity ownership interests and underreported taxable income.

### Overt Acts

74.     In furtherance of the conspiracy, and to achieve the unlawful objects thereof, Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, MIRNA KAMAL FAYAD, and CORY JUSTIN MANN, and other persons known and unknown to the grand jury, committed the following overt acts in the Eastern District of Michigan and elsewhere:

a.     Beginning in 2016, Defendant CORY JUSTIN MANN paid, and caused to be paid, approximately $104,000 in funds in 2016 and approximately $115,300 in 2017 from a Total Toxicology bank account to

Defendant ROSINA ANGELO as purported "commission" fee payments. Specifically:

          i.      On or about January 25, 2016, Defendant CORY JUSTIN MANN paid, and caused to be paid, approximately $6,851.87 from Total Toxicology's JP Morgan Chase bank account ending in 5165 via check no. 1263 made payable to Defendant ROSINA ANGELO to pay a purported "commission" fee earned from ENTITY H; and

          ii.      On or about January 8, 2018, Defendant CORY JUSTIN MANN paid, and caused to be paid, approximately $1,567.42 from Total Toxicology's JP Morgan Chase bank account ending in 5165 via check no. 2736 made payable to Defendant ROSINA ANGELO to pay a purported "commission" fee earned from ENTITY H;

        b.      On or about August 1, 2017, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD, opened a bank account and executed a signature card for 4 Health's Bank of America bank account ending in 7336;

        c.      In or about April 2018, Defendant CORY JUSTIN MANN and others provided fraudulent and incomplete Gravity Imaging financial records to the return preparer for Defendant CORY JUSTIN MANN causing

inaccurate Gravity Imaging Schedules K-1 or Forms 1099 to be filed with the IRS;

        d.    On or about April 3, 2018, Defendant CORY JUSTIN MANN filed, and caused to be filed, with the IRS a false and fraudulent Gravity Imaging 2017 Form 1065 that failed to accurately report, among other things, the ownership interests held in Gravity Imaging;

        e.    From on or about May 14, 2018, through at least 2021, Defendants HASSAN KAMAL FAYAD, MICHAEL ANGELO and INDIVIDUAL J, disbursed, and caused to be disbursed, funds from business bank accounts Defendant HASSAN KAMAL FAYAD controlled, including Gravity Imaging's and 4 Transport's bank accounts, to pay business expenses owed by Defendant MICHAEL ANGELO and Pacific Marketing, an entity controlled by Defendants MICHAEL ANGELO and ROSINA ANGELO. For example:

        i.    On or about September 7, 2018, Defendants HASSAN KAMAL FAYAD, MICHAEL ANGELO and INDIVIDUAL J disbursed, and caused to be disbursed, approximately $10,000 from a Gravity Imaging bank account to ENTITY G to pay a business expense incurred by Defendant MICHAEL ANGELO and Pacific Marketing, an entity controlled by Defendants MICHAEL ANGELO and ROSINA ANGELO;

ii.     On or about December 16, 2019, Defendants HASSAN KAMAL FAYAD, MICHAEL ANGELO and INDIVIDUAL J disbursed, and caused to be disbursed, approximately $5,000 from a Gravity Imaging bank account to ENTITY G to pay a business expense incurred by Defendant MICHAEL ANGELO and Pacific Marketing, an entity controlled by Defendants MICHAEL ANGELO and ROSINA ANGELO;

iii.    On or about January 16, 2020, Defendants HASSAN KAMAL FAYAD, MICHAEL ANGELO and INDIVIDUAL J disbursed, and caused to be disbursed, approximately $5,000 from a Gravity Imaging bank account to ENTITY G to pay a business expense incurred by Defendant MICHAEL ANGELO and Pacific Marketing, an entity controlled by Defendants MICHAEL ANGELO and ROSINA ANGELO;

iv.     On or about January 19, 2021, Defendants HASSAN KAMAL FAYAD, MICHAEL ANGELO and INDIVIDUAL J disbursed, and caused to be disbursed, a total of approximately $16,000 from 4 Transport's, 4 UR Recovery's, 411 Help's, Gravity Imaging's, Spine and Health, and Tox Testing's bank accounts to ENTITY G to pay a business expense incurred by Defendant MICHAEL ANGELO and Pacific Marketing, an entity controlled by Defendants MICHAEL ANGELO and ROSINA ANGELO.

v.      On or about April 12, 2021, Defendants HASSAN KAMAL FAYAD, MICHAEL ANGELO and INDIVIDUAL J  disbursed, and caused to be disbursed, a total of approximately $4,000 from 4 UR Recovery's, 411 Help's, Gravity Imaging's, and Tox Testing's bank accounts to ENTITY G to pay a business expense incurred by Defendant MICHAEL ANGELO and Pacific Marketing, an entity controlled by Defendants MICHAEL ANGELO and ROSINA ANGELO.

f.      On or about May 31, 2018, Defendants HASSAN KAMAL FAYAD, MIRNA KAMAL FAYAD, and CORY JUSTIN MANN executed, and caused to be executed, a fraudulent "Sale of Membership Interest Agreement" purporting to document the sale of Defendant CORY JUSTIN MANN's ownership interest in Gravity Imaging to the entity 4 Health and Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD;

g.      From June 2018 through at least February 2022 Defendant CORY JUSTIN MANN, disbursed, and attempted to disburse, at least approximately $700,000 of funds from Gravity Imaging's bank accounts to bank accounts he controlled for his own personal use;

h.      On or about October 24, 2018, Defendant HASSAN KAMAL FAYAD drafted, and caused to be drafted, Check No. 1444 drawn on Spine and Health Bank of America bank account number ending 0676

44

for $5,000 made payable to Virgilio Leasing, an entity controlled by Defendant MICHAEL ANGELO;

      i.     In or about February 2019, Defendant CORY JUSTIN MANN and others provided fraudulent and incomplete Gravity Imaging financial records to the return preparer for Defendant CORY JUSTIN MANN, causing inaccurate Gravity Imaging Schedules K-1 or Forms 1099 to be filed with the IRS;

      j.     On or about February 15, 2019, Defendant CORY JUSTIN MANN filed, and caused to be filed, with the IRS a false and fraudulent Gravity Imaging 2018 Form 1065 that failed to accurately report, among other things, the ownership interests held in Gravity Imaging;

      k.     In or about April 2019, Defendants HASSAN KAMAL FAYAD, MIRNA KAMAL FAYAD, and INDIVIDUAL F and INDIVIDUAL L provided, and caused to be provided, fraudulent financial records to Defendant HASSAN KAMAL FAYAD's return preparer and caused Defendant HASSAN KAMAL FAYAD's return preparer to prepare a false and fraudulent 2018 Form 1040 for Defendant HASSAN KAMAL FAYAD;

      l.     On or about April 3, 2019, Defendant HASSAN KAMAL FAYAD and others prepared and filed with the IRS a false and fraudulent 2018 Form 1040 for Defendant HASSAN KAMAL FAYAD;

m.     In or about May 2019, Defendants CORY JUSTIN MANN, HASSAN KAMAL FAYAD, MIRNA KAMAL FAYAD, provided, and caused to be provided, fraudulent and incomplete Gravity Imaging financial records to the return preparer for Defendant HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD, causing inaccurate Gravity Imaging Schedules K-1 or Forms 1099 to be filed with the IRS;

n.     On or about May 25, 2019, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD filed, and caused to be filed, with the IRS a false and fraudulent Gravity Imaging 2018 Form 1120S;

o.     On or about June 5, 2019, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD executed a signature card for Spine and Health's Fifth Third Bank account ending in 5379;

p.     On or about June 12, 2019, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD executed a signature card for New Horizon's Fifth Third Bank account ending in 4851;

q.     From June 19, 2019, to September 3, 2019, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD deposited, and caused to be deposited, at least approximately $87,000 in checks made payable to New Horizon into New Horizon Fifth Third Bank account ending in 4851;

r. On or about July 6, 2019, Defendant HASSAN KAMAL FAYAD and INDIVIDUAL L executed a signature card for Spine and Health Fifth Third Bank account ending in 5379 adding INDIVIDUAL L as an authorized signor for the bank account;

s. On or about July 23, 2019, Defendant HASSAN KAMAL FAYAD drafted, and caused to be drafted, Check No. 304 drawing on Spine and Health Fifth Third Bank account number ending 5379 for $2,000 made payable to 4 Transport;

t. On or about August 1, 2019, Defendants HASSAN KAMAL FAYAD and INDIVIDUAL L, provided, and caused to provided, fraudulent and incomplete financial records to INDIVIDUAL L's return preparer for use in the preparation of the INDIVIDUAL L's 2018 Form 1040 and to prevent any Form 1099 or Form W-2 from being filed with the IRS reporting taxable income earned by Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and MIRNA KAMAL FAYAD from Spine and Health for calendar year 2018;

u. In or about September 2019, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD provided, and caused to be provided, incomplete financial records to their return preparer for use in the preparation of the New Horizon 2018 Form 1120S;

v.      From at least 2020 through 2021, Defendants MICHAEL ANGELO and INDIVIDUAL J directed Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD to disburse, and caused to be disbursed, at least approximately $27,000 from New Horizon's bank accounts made payable to Virgilio Leasing, an entity controlled by Defendant MICHAEL ANGELO;

w.      In or about May 2020, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD, provided, and caused to be provided, fraudulent Gravity Imaging financial records to the return preparer and caused the preparation of a false and fraudulent Gravity Imaging 2019 Form 1120S, including a fraudulent Gravity Imaging 2019 Profit and Loss statement that caused the return preparer to omit over approximately $1,057,000 of taxable income from the 2019 Form 1120S submitted to the IRS;

x.      On or about October 15, 2020, Defendants HASSAN KAMAL FAYAD and INDIVIDUAL L, provided, and caused to provided, fraudulent and incomplete financial records to INDIVIDUAL L's return preparer for use in the preparation of the INDIVIDUAL L's 2019 Form 1040 and to prevent any Form 1099 or Form W-2 from being filed with the IRS reporting taxable income earned by Defendants MICHAEL ANGELO,

HASSAN KAMAL FAYAD, and MIRNA KAMAL FAYAD from Spine and Health for calendar year 2019;

y.   On or about September 15, 2020, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD and others caused the preparation and filing of a false and fraudulent Gravity Imaging 2019 Form 1120S with the IRS;

z.   In or about March 2021, Defendants HASSAN KAMAL FAYAD, MIRNA KAMAL FAYAD, and INDIVIDUAL F and INDIVIDUAL L provided, and caused to be provided, fraudulent financial records to Defendant HASSAN KAMAL FAYAD's return preparer and caused Defendant HASSAN KAMAL FAYAD's return preparer to prepare a false and fraudulent 2019 Form 1040 for Defendant HASSAN KAMAL FAYAD;

aa.   On or about March 10, 2021, Defendant HASSAN KAMAL FAYAD and others prepared and filed with the IRS a false and fraudulent 2019 Form 1040 for Defendant HASSAN KAMAL FAYAD;

ab.   On or about July 6, 2021, Defendants HASSAN KAMAL FAYAD and INDIVIDUAL L, provided, and caused to provided, fraudulent and incomplete financial records to INDIVIDUAL L's return preparer for use in the preparation of the INDIVIDUAL L's 2020 Form 1040 and to prevent any Form 1099 or Form W-2 from being filed with the IRS reporting taxable

income earned by Defendants MICHAEL ANGELO, HASSAN KAMAL FAYAD, and MIRNA KAMAL FAYAD from Spine and Health for calendar year 2020;

ac. In or about October 2021, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD and INDIVIDUAL F provided, and caused to be provided, fraudulent financial records to a return preparer for use in the preparation of the New Horizon 2019 and 2020 Forms 1120S;

ad. On or November 22, 2021, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD and INDIVIDUAL F filed, and caused to be filed, with the IRS a false and fraudulent New Horizon 2019 Form 1120S; and

ae. On or January 3, 2022, Defendants HASSAN KAMAL FAYAD and MIRNA KAMAL FAYAD and INDIVIDUAL F filed, and caused to be filed, with the IRS a false and fraudulent New Horizon 2020 Form 1120S.

**All in violation of Title 18, United States Code, Section 371.**

## COUNTS TWENTY-SIX AND TWENTY-SEVEN

26 U.S.C. § 7201
Tax Evasion - Evasion of Payment
(Michael Angelo)

D-1 MICHAEL ANGELO

75. The factual allegations contained in Paragraphs 1 through 30, 32 through 43, 46 through 49, 52 through 57, 59 through 61, 63 through 64, 66 through 68, 66 through 68, 70, 72 through 74 of this Indictment are re-alleged and incorporated herein as if copied verbatim.

76. Defendant MICHAEL ANGELO held an ownership interest in Pacific Marketing. Pacific Marketing did not elect to be treated as a corporation. Therefore, Defendant MICHAEL ANGELO was required to report, among other things, income and expenses earned by Pacific Marketing on a Schedule C.

77. During the tax years 2014 and 2015, Defendant MICAHEL ANGELO, in the Eastern District of Michigan and elsewhere, directed his clients to issue payment via checks for purported advertising and marketing services made payable to Pacific Marketing, an entity he controlled.

78. INDIVIDUAL E prepared Defendant MICHAEL ANGELO's 2014 and 2015 Forms 1040.

79.    Defendant MICHAEL ANGELO failed to disclose gross receipts earned from Pacific Marketing to INDIVIDUAL E causing INDIVIDUAL E to create false and fraudulent 2014 and 2015 Forms 1040 for Defendant MICHAEL ANGELO.

80.    Between in or around the dates set forth in the table below, in the Eastern District of Michigan and elsewhere, Defendant MICHAEL ANGELO did willfully attempt to evade and defeat income tax due and owing by him and his spouse to the United States of America for the calendar years set forth below, by committing the following affirmative acts, among others:

a.    Diverting and causing to be diverted funds from ENTITY A, ENTITY B, ENTITY C, ENTITY D, 411 Help, 4 Transport, 4 UR Recovery, Gravity Imaging, Greater Lakes, Spine and Health, and New Horizon to nominee bank accounts in the names of Alleycat, Comprehensive Billing, Pacific Marketing, Virgilio Leasing, and JV Holdings for use by Defendant MICHAEL ANGELO to pay his own personal expenses and to conceal Defendant MICHAEL ANGELO's taxable income from the IRS;

b.    Using funds from Michigan Accident Associates', ENTITY C's, and ENTITY D's bank accounts to pay for Defendant MICHAEL

ANGELO's personal expenses and to conceal Defendant MICHAEL

ANGELO's taxable income from the IRS;

        c.      Submitting and causing Defendant ROSINA ANGELO

along with INDIVIDUAL J to submit fraudulent financial records to

INDIVIDUAL E and other return preparers to conceal taxable income

earned by Defendant MICHAEL ANGELO from the IRS; and

        d.      Preparing and causing to be prepared, and signing and

causing to be signed, false and fraudulent U.S. Individual Income Tax

Returns, Forms 1040 for Defendant MICHAEL ANGELO, which were

submitted to the IRS, for each tax year shown in the chart below, with each

tax year shown in the chart below constituting a separate count of this

Indictment:

| Count | Date Tax Return Filed (On or About) | Tax Year |
|---|---|---|
| **TWENTY-SIX** | May 10, 2017 | 2014 |
| **TWENTY-SEVEN** | August 7, 2018 | 2015 |

**All in violation of Title 26, United States Code, Section 7201.**

Date: <u>April 6, 2022</u>                         This is a True Bill.


                                    <u>s/Grand Jury Foreperson</u>

STUART M. GOLDBERG
*Acting Deputy Assistant Attorney General*
U.S. Department of Justice, Tax Division
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515




<u>s/MARK MCDONALD</u>
MARK MCDONALD
CHRISTOPHER P. O'DONNELL
Trial Attorneys
U.S. Department of Justice, Tax Division

**Companion Case information MUST be completed**

| United States District Court<br>Eastern District of Michigan | Criminal Case |
|---|---|

Case: 4:22-cr-20188
Judge: Kumar, Shalina D.
MJ: Ivy, Curtis
Filed: 04-06-2022 At 08:53 AM
IN RE: SEALED MATTER (sk)

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | | **Companion Case Number:** |
|---|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | | **Judge Assigned:** |
| ☐ Yes     ☑ No | | **AUSA's Initials:** MSM |

Case Title: USA v.  MICHAEL ANGELO, et al.

County where offense occurred :  Genesee County

Check One:     ☑ Felony          ☐ Misdemeanor          ☐ Petty

    ☒ Indictment/____Information --- **no** prior complaint.
    ____Indictment/____Information --- based upon prior complaint [Case number: _____]
    ____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

Superseding to Case No: _____     **Judge:** _____

    ☐ Original case was terminated; no additional charges or defendants.
    ☐ Corrects errors; no additional charges or defendants.
    ☐ Involves, for plea purposes, different charges or adds counts.
    ☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

April 6, 2022
_____
Date

/s/MARK MCDONALD
_____
Mark McDonald
Assistant United States Attorney
210 Federal Building
600 Church Street
Flint, Michigan 48502
Telephone:  (810) 766-5177
Email: mark.s.mcdonald@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

03/11/2013